IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


CASE NO. 15-cr-00204-RBJ-2

UNITED STATES OF AMERICA,

       Plaintiff,

v.

**2.    RHIANNON CARNAHAN**,

       Defendant.

_____

**MOTION FOR A NON-GUIDELINE SENTENCE OF 15 YEARS IMPRISONMENT**
_____

      Ms. Carnahan, through undersigned counsel, Brian R. Leedy, respectfully requests the imposition of sentence of 15 years' imprisonment (180 months), followed by a 10-year period of supervised release with the standard and special conditions outlined in the Presentence Investigation Report (Doc. 96, hereafter PSR, pages R-1 through R-4).

      Here, the advisory sentencing guidelines call for a sentencing range of 600 months. United States Probation recommends a sentence of 240 months. Ms. Carnahan agrees with Probation that a sentence substantially lower than the advisory guideline range is warranted. As outlined in the "Justification" portion of the PSR (R-5 through R-6), and discussed herein, the nature and circumstances of the offense, and Ms. Carnahan's history and characteristics support a non-guideline sentence. Ms. Carnahan

1

maintains that an analysis of the factors set forth in 18 U.S.C. § 3553(a) compels the imposition of a sentence of 15 years, which is sufficient but not greater than necessary to served justice in this case.

## I.     <u>Nature of the Offense and the History and Characteristics of the Defendant</u>.

As part of its analysis, the Court must consider the nature of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a)(1). An analysis of these two factors supports the requested 15-year sentence.

### A.     Nature of the Offense.[1]

Ms. Carnahan has been convicted of horrendous criminal conduct. Her actions deserve significant punishment. The sentence requested will keep Ms. Carnahan in custody, followed by supervised release involving severely restrictive and invasive conditions, until she is at least fifty-one years old.[2] Such punishment adequately recognizes the nature of the instant offense, including specific factors that render the offense distinct from others.

The requested punishment also acknowledges Ms. Carnahan's remorse for her actions and immediate acceptance of responsibility. When contacted by law enforcement upon being identified as one of the individuals Mr. Hill had been contacting via various online personas, Ms. Carnahan waived her Miranda rights and provided complete and accurate information about her crimes. PSR ¶ 13-15. Within months of her arrest Ms.

---

[1] This information is derived from Part A of the PSR ("The Offense"), unless otherwise noted.

[2] This accounts for presentence confinement credit since April 21, 2015, an estimated 54 days per year of good time, and a supervised release term of 10 years.

Carnahan chose to accept responsibility for her unlawful conduct, and plead guilty to the charges in the Indictment.

The seriousness of the offense committed by Ms. Carnahan cannot be understated, and for purposes of punishment and specific deterrence, the severe sanction of 15 years in prison is warranted. Ms. Carnahan has never denied her wrongdoing, nor has she has not sought to avoid responsibility. Ms. Carnahan is a sincerely remorseful individual who has taken full responsibility for her actions. The decision to plead guilty and accept responsibility for conduct was not one that Ms. Carnahan struggled with, which is representative of her remorse.

The facts stipulated to by the government, Mr. Hill, and Ms. Carnahan in their respective plea agreements[3], as well as the PSR, reflect the unique distinguishing circumstances of the offense, notably including the coercion and manipulation she was subjected to by Mr. Hill. See PSR ¶ R-5.[4]:

On February 11, 2015, an adult female reported an incident of extortion to the Colorado Springs Police Department (CSPD). She advised she was being extorted to send sexually explicit depictions to Mr. Hill, along with other parties associated with Hill, that other online personas of Mr. Hill. The other parties she claimed were involved were an adult female named Holley Bee, an adult female known as Sara Greenwalt, an adult

---

[3] Ms. Carnahan's Plea Agreement is found at Doc. 63, and Mr. Hill's Plea Agreement is found at Doc. 87.
[4] See Doc. 87, pgs. 11-13.

male known as Nick Wise, and an adult male who claimed to be a police officer in the Internet Crimes Against Children (ICAC) unit known as "Steven Cross" (Cross).

This extortion was primarily occurring on a phone messaging application called Kik Messenger (Kik) and the victim of the extortion described that she was communicating with Mr. Hill via text at which time he sent her unwanted child pornography images via email. She was then told by Hill that if she reported to the police she would be arrested for being in possession of child pornography.

At one point, Hill sent the woman an email containing a video depicting child pornography. Later, the same woman was contacted by Cross, the online persona of Mr. Hill who represented himself to be an officer, who told her that he knew about the photographs and videos in her possession and that he was going to issue a warrant and have her arrested. Mr. Hill, though the "Cross" persona asked the woman to take sexually explicit images of herself and produce child pornography. The woman did not go through with the request to produce child pornography but did go through with certain requests by Mr. Hill's "Cross" persona to send him sexually explicit videos in which she was depicted.

The woman ultimately reported the incidents to CSPD, and later reported that she was receiving emails from the email account of Mr. Hill's "Cross" persona telling the woman that she "should probably find somewhere to go for awhile" informing her that the sexually explicit videos she produced for Mr. Hill's "Cross" persona were published online.

Law enforcement obtained email records for Mr. Hill's "Cross" persona and found Ms. Carnahan's email address. On February 18, 2015, the "Cross" email account sent

29 emails to the email accounts of Ms. Carnahan and each of these 29 emails contained a video attachment, 27 of which appeared to be videos depicting child pornography.

Mr. Hill was arrested and admitted to creating fake personas on Kik and exchanging child pornography with other individuals. Mr. Hill admitted to using Kik usernames associated with "Nick Wise," "Steven Cross," and his own name of "Tyler Hill," along with other names which he could not recall. He stated that he used a random picture of a police officer that he found through Google for his "Steven Cross" Kik account profile. Hill said he introduced a police officer persona to "scare the shit" out of the woman that reported the extortion, and that he represented himself to be all his online personas.[5]

Mr. Hill explained that he engaged in the same type of conduct with Ms. Carnahan. Hill stated he sent child pornography to Carnahan through her email account at "rhiannon.carnahan@gmail.com." He also said that Carnahan sent him child pornography using "Kik." Ms. Carnahan was arrested and interviewed, and confirmed that she had been communicating with "Cross" via Kik, that "Cross" had sent her child pornography, and that she had produced child pornography in response to the demands of "Cross". Additionally, after Ms. Carnahan produced the child pornography in response to Mr. Hill's

---

[5] The PSR states that his main goal was to have the woman commit a hands-on offense with a child, preferably female and 3 years of age or younger. In response to Mr. Hill's demands the woman went as far as to post a babysitting ad on Craigslist, pick up a job, and babysit for a 3-year-old female child. She admitted taking a picture of the child, fully clothed and sending it to 'Steven Cross' and to prove that she was cooperating, but that is as far as it went. Upon further order of 'Steven Cross,' she sought a man on Craigslist to have sex with her and took a video of him urinating and defecating on her. She then forwarded the video to 'Steven Cross.' When interviewed, she admitted to committing the act out of fear, as it was a required order given by 'Officer Steven Cross.'" (See Doc. 96 p. 8)

demands, she sent the contraband to another one of Mr. Hill's online personas, "Nick Wise." Mr. Hill was able to coerce and manipulate others, in addition to Ms. Carnahan, as evidenced by his dealings with the woman who reported him to the police.

Mr. Hill described Ms. Carnahan as "less scared, but more gullible than others" he had recently manipulated. The case agent indicated that other than the exchanges between Ms. Carnahan and Mr. Hill, and Ms. Carnahan's otherwise voluntary exchange with 'Nick Wise,' one of codefendant Hill's created persona's, there was no other inappropriate content found on the Ms. Carnahan's cell phone. The remaining content found on the defendant's phone was indicative of her acting appropriately with Minor #1." Doc. 96 pg. 8.

### B.    Ms. Carnahan's History and Characteristics.

Ms. Carnahan is 30 years old.[6]  She was an only child born to Robert Carnahan and Deborah Petty.  Her father is in prison for sexually assaulting his granddaughter.  Her mother is married to Jerry Petty was Ms. Carnahan's father figure since she was 5 years old.  Deborah and Jerry live in Cripple Creek, Colorado where Deborah has worked at the county treasurers for 20 years.   Ms. Carnahan has two half-brothers, Christopher and Zachariah Merrick, who both live in Colorado.

Ms. Carnahan maintains close relationships with her parents and siblings, all of whom are aware of her offense, and all whom continue to support her.  Her friends and

---

[6] This information is derived from Part C of the PSR unless otherwise noted.

family describe her as loving, honest, caring, and responsible individual, and view her criminal conduct as aberrant. **Attachment A** --- Letters of Character Reference.

Ms. Carnahan graduated from high school in 2004 and went on to enter the United States Army. From 2004 to 2008 she was on active duty with the Army in supply management, during which time she was deployed to Iraq, and served in Germany. She left active duty with an honorable discharge and rank of E-4. While in the Army Ms. Carnahan earned two Army Achievement Medals, Good Conduct Medals, an Army Commendation Medal, a National Defense Service Medal, a Global War on Terrorism Service Medal, and Iraq Campaign Medal with Campaign Star, and Army Service Ribbon, and two Overseas Service Ribbons.

After her active duty Ms. Carnahan became an Army reservist in addition to holding other jobs. A recommendation for another Army Achievement Medal states that Ms. Carnahan had exemplary achievement in her duties as a reservist. From 2010 to 2015 she was worked in a civilian capacity on the Ft. Carson Army Base in the motor pool warehouse.

Ms. Carnahan's Army Service and employment record indicate that she has a strong work ethic with capabilities to match. Ms. Carnahan will dedicate the same character traits to her rehabilitation, both in custody, and on supervised release.

### C. Balancing the Nature of the Offense with Ms. Carnahan's History and Characteristics.

Undoubtedly, Ms. Carnahan's crimes deserve severe punishment. But, Ms. Carnahan's unlawful conduct must be weighed against the positive things that she has

done. Even recognizing that Ms. Carnahan's actions demand stiff punishment, she is a good, yet flawed, person, with a history of hard work, service to her country, and building strong relationship with her family and friends. A 15-year sentence provides severe punishment for the instant offense, yet recognizes her individual characteristics. As a result, such a sentence provides due consideration to the nature of the offense and Ms. Carnahan's history and characteristics, while effectuating punishment and deterrence with a sentence to imprisonment that is sufficient, but not greater than necessary.

## II.     A Sufficient, but not Greater than Necessary Sentence.

Finally, after considering all the factors set forth in 18 U.S.C. § 3553(a), this Court must impose a sentence sufficient, *but not greater than necessary*, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

These factors include the need to reflect the seriousness of the offense and promote respect for the law, to afford adequate deterrence, to protect the public from further crimes, and to provide the defendant with needed educational, vocational, and medical treatment. *See* 18 U.S.C. § 3553(a)(2). A 15-year sentence achieves these goals.

### A.     Seriousness of the Offense and Respect for the Law.

A 15-year sentence reflects the seriousness of the offense and promotes respect for the law. While the offense was undoubtedly serious, Ms. Carnahan has taken full responsibility for that offense. She now has a first felony conviction, and an extraordinarily stigmatizing felony sex crime offense. The defense is requesting a sentence that will keep her behind bars followed by the most restrictive form of supervised release imposed

until she's in her fifties.  On supervision, she will face a minimum of 10 years of rigorous offense specific counseling, and be required to comply with sex offender registration for life.

**B.    Correctional Treatment.**

The requested sentence will provide Ms. Carnahan with necessary mental health treatment and sex offender therapy.  Ms. Carnahan wants this treatment and is hoping to begin this treatment while in custody.   The results of an offense specific assessment support her amenability to treatment and low risk of recidivism.  **Attachment B** --- Evaluation of Rhiannon Carnahan by Dr. Birgit Fisher and CV of Dr. Fisher.

Ms. Carnahan was assessed on October 3, 2015 and October 9, 2015 by Dr. Birgit Fisher and Ms. Amanda Retting, M.A.  Ms. Carnahan's sexual and relationship history, psychological screening tests, assessment of sexual interest, case reports, criminal history, and excerpts from her online chat history, were addressed and reviewed by Dr. Fisher.  Dr. Fisher administered Multiaxial tests to Ms. Carnahan:

- Million Multiaxial Inventory
- Intellectual Screening Test
- Drug and Alcohol Use questionnaires
- Affinity 2.5 Assessment of Sexual Interest
- Violent Risk Screen-Sex Offender Version
- Psychopathy Checklist Revised

Dr. Fisher's findings contained in the report are summarized as follows:

Ms. Carnahan's sexual interest was assessed using a visual reaction time test called the Affinity, which combines two overt measures based on an individual's self-reported sexual interest, with a covert measure that objectively gauges an individual's

sexual interest in male and female toddlers, pre-adolescent children, teens and adults. Ms. Carnahan identified a general sexual interest in adult males, which was consistent with the objective ratings identified by the instrument. Ms. Carnahan did not show any deviant sexual interest during the assessment.

Ms. Carnahan's risk of recidivism was based on a combination of static and dynamic factors and focused on identified as critical to the risk management of female offenders. Dr. Fisher notes in her report that "sexual offenses by females are still poorly understood, as well as that the sexual recidivism rate among female sexual offenders is extremely low (approximately 2.5%)."

Dr. Fisher utilized the Violent Risk Scale: Sexual Offender Version and the Hare Psychopathy Checklist to gain an understanding of Ms. Carnahan's recidivism rate. Dr. Fisher found that "[o]verall, Ms. Carnahan's risk for sexual recidivism was in the **low** risk range" associated with clinical estimates of a 2.6% sexual recidivism rate within a 3-year period, a 3% sexual recidivism rate within a 5-year period, and a 6.7% sexual recidivism rate within a 10-year period.

Dr. Fisher further utilized the PCL-R:2 which is a "rating scale of personality traits that, when present, increase the risk of criminal, violent, and sexual re-offense." Based on the PCL-R:2 Ms. Carnahan fell into the **low** risk range. Ms. Carnahan combined score fell within the 1.6[th] percentile which "reflects little concern regarding potential recidivism risk."

Dr. Fisher opines that "[c]urrent understandings of factors related to recidivism emphasize the need to carefully weigh [Ms. Carnahan's] identified level of risk, her

10

corresponding treatment needs, and responsivity, the delivery of services in the manner that takes into account her criminogenic needs (dynamic risk factors), treatment readiness and learning style." Dr. Fisher recommended that, based on Ms. Carnahan's low recidivism risk, and the likelihood of her risk increasing if "she is incarcerated for a lengthy period of time and placed in treatment with higher risk offenders" the shortest sentence allowed by statute be imposed. Dr. Fisher further recommended that, because Ms. Carnahan's offenses were "driven by a combination of factors that deviate from the cognitive and behavioral dynamics typically associated with hands-on offenses . . . treatment should target her sexual compulsivity, insight into the dynamics of the offending behavior and intimacy deficits." Finally, Dr. Fisher recommended that offense specific treatment include Ms. Carnahan addressing the impact of her offending behavior on the victim of her offense, as well as secondary victims.

While in custody pending sentencing Ms. Carnahan has consistently sought available treatment. She has participated in Co-Occurring/DBT Group therapy sessions through the Jefferson Center for Mental Health Jail Based Behavioral Health Services Program (JBBS) since October of 2015. Additionally, while in custody, Ms. Carnahan has completed the six session Endow Course, thirty consecutive sessions of the Rite of Christian Initiation of Adults, and the Celebrate Recovery course. **Attachment C** --- Certificates of Completion.

Through Dr. Fisher's evaluation Ms. Carnahan has demonstrated her low risk of recidivism and amenability to treatment. Her efforts to better herself while in custody

further demonstrate her sincere desire to take full advantage of any resources provided to her while serving her sentence, and while on supervision.

### C. Deterrence and Protection of the Public.

Finally, with the mental health treatment and sex offender therapy that Ms. Carnahan will receive in custody, a 15-year sentence will afford adequate deterrence and protect the public from further crimes.

Following prison, Ms. Carnahan will be subjected to the strictest supervision imaginable, and she will be required to register as a sex offender for the rest of her life. Based upon the current conditions that sex offender therapists place on sex offenders, Ms. Carnahan can expect to: (1) not be permitted to associate with minors, (2) provide a treatment plan for any time that he spends in public, which plan must guarantee that she not come into contact with minors, (3) participate in polygraph testing, (4) be subjected to various search conditions, (5) not be permitted to access the internet, and (6) participate in sex offender treatment.  Violations of any of these conditions will send Ms. Carnahan back to prison.  Simply put, given her age and the strict conditions of release, the requested sentence will protect the public and deter future criminal conduct.

Such a conclusion is bolstered by the fact that Ms. Carnahan has never before had a prison sentence.  In *United States v. Qualls*, 373 F. Supp. 2d 873 (E.D. Wis. 2005), Judge Adelman addressed this aspect of sentencing.  Per Judge Adelman:

> It is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct, to note the length of any previous sentences imposed.  Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-

offend.  *Id.* at 877; *see also United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006) ("Also significant is the district court's finding that a prison term would mean more to Mr. Baker than to a defendant who previously has been imprisoned".)

Consideration of this factor is consistent with § 3553's directive that the sentence reflect the need for just punishment and adequate deterrence.

### III.     The Need to Avoid Unwarranted Sentencing Disparities.

Ms. Carnahan's offense is factually distinct from other similarly charged offenses. The conduct of Mr. Hill distinguishes the nature and circumstances of Ms. Carnahan's offense to a degree that warrants the requested sentence.  Additionally, given the findings of Dr. Fisher, any sentencing disparity is warranted based Ms. Carnahan's individual characteristics, such as her low risk of recidivism, and the fact that her offenses were "driven by a combination of factors that deviate from the cognitive and behavioral dynamics typically associated with hands-on offenses" and not a sexual interest in children.  Attachment C, supra.

### IV.     Conclusion.

In the end, the defense is requesting a lengthy sentence.  Fifteen years in prison undoubtedly effectuates punishment and deterrence, and further reflects the nature and circumstances of the instant offense, and Ms. Carnahan's history and characteristics. Such a sentence is sufficient, but no greater than necessary, to achieve the goals of Section 3553(a)(2).


Respectfully submitted,

s/ Brian R. Leedy
Brian R. Leedy
Stimson Glover Stancil Leedy
1875 Lawrence St. Suite 420
Denver, CO  80202
Telephone:  720-644-8066
brian@sgslattorneys.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2017, I electronically filed the foregoing

**MOTION FOR A NON-GUIDELINE SENTENCE OF 15 YEARS IMPRISONMENT**

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Alecia L. Riewerts
Assistant U.S. Attorney
Email: Alecia.Riewerts@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Rhiannon Carnahan (U.S. Mail)

s/ Brian R. Leedy
Brian R. Leedy
Stimson Glover Stancil Leedy
1875 Lawrence St. Suite 420
Denver, CO 80202
Telephone: 720-644-8066
brian@sgslattorneys.com